UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-61-FDW

| WILLIAM D. BULLARD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| FNU SNIPES, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 6).

## I. BACKGROUND

*Pro se* Plaintiff William D. Bullard filed a civil rights suit pursuant to 42 U.S.C. § 1983 on February, 2016, addressing incidents that allegedly occurred at the Lanesboro Correctional Institution at Polkton, North Carolina.[1] He has named as Defendants the following Lanesboro C.I. employees: Correctional Officer FNU Snipes and FNU Heh, Sergeant FNU Pressley, and Nurse FNU Kapull.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff was placed in a holding cell after an "incident" in F-Block on August 27, 2015, while he was waiting to see "mental health." (Doc. No. 1 at 5). Plaintiff spoke to Sergeant Allen about "officers and him being threatened" on F-Block, about which Plaintiff had sent several requests to the unit manager and assistant superintendent. (Doc. No. 1 at 5). Allen told Plaintiff he would be moved to A-Block

---

[1] He filed the Complaint while incarcerated at the Polk Correctional Institution in Butner, North Carolina, and presently resides at the Maury Correctional Institution in Maury, North Carolina.

1

and Plaintiff agreed. However, after Plaintiff finished with mental health, Allen took him back to the holding cell and told him he was going back to F-block pursuant to Unit Manager Hartley's instructions. Plaintiff refused but was told he was going "one way or another." (Doc. No. 1 at 5). Hartley, Allen and several officers came to the holding cell while Hartley held a video camera. Plaintiff attempted to pull the waist chain from around his waist but the officers put the chain back around him. The "roughly" pushed Plaintiff against the wall "due to him resisting" and he somehow got a bleeding cut over his eye. (Doc. No. 1 at 5-6). Officer Snipes came from another unit and put a spit mask over Plaintiff's face even though he was not spitting, and punched Plaintiff's face while smiling. Sergeant Phalemon told Snipes to stop because it was being recorded. (Doc. No. 1 at 6).

Dr. Hasenwall from mental health saw what was happening and decided to have Plaintiff brought to "main medical." (Doc. No. 1 at 6). Officers pushed Plaintiff up against the wall and Snipes made "disrespectful comments" to him. (Doc. No. 1 at 6). After "they" roughly slammed Plaintiff onto the floor, Officer Heh kicked his face three times. Officer Rodka was standing beside Heh when this happened. (Doc. No. 1 at 6). Officer Snipes punched and hit Plaintiff several times while he was on the ground. After Plaintiff was strapped to a stretcher and was being carried down the hallway toward main medical, Plaintiff attempted to take off the spit mask. Snipes grabbed the mask and punched Plaintiff's face again. (Doc. No. 1 at 7).

In main medical, Plaintiff was put in an observation room where Pressley and Officer Holder held him in a corner while Pressley choked him with her hand, which left visible marks on his neck. Plaintiff was restrained on a bed by his legs and right arm while "they" were attempting to secure his left leg. Snipes kneed Plaintiff in the face two times as Pressley stood nearby. Snipes tried to knee Plaintiff's face a third time but Plaintiff was able to move and said "Snipes stop

2

kneeing me in my face." (Doc. No. 1 at 7).

Plaintiff's left hip and nose were badly bruised and swollen, he had a black eye and cuts to his face, and he was not able to really walk on his left leg. (Doc. No. 1 at 11).

When the nurse brought Plaintiff his night medication, he described what happened and told her that his nose and hip were hurting, and that he felt his nose was fractured. Nurse Kapull said they would see him once someone came to go into the room with her. Plaintiff said an officer was already with her but she did not say anything. She looked at the back of Plaintiff's neck and his face and said "yeah, your nose is bruised bad," and left. (Doc. No. 1 at 8). Plaintiff tried to get "custody" to tell "medical staff" he needed to be medically screened due to the use of force and his injuries but he was not seen by medical for screening that night. (Doc. No. 1 at 8).

The next morning, August 28, 2015, Dr. Hasenwall came to see Plaintiff and he told her he was hurting, injured, and had not been medically screened the night before. Dr. Hasenwall arranged for medical to see him. Sergeant Williams and Officer Ferguson came to take Plaintiff to see the nurse. Plaintiff could not put pressure on his left leg due to his hip injury so they assisted him to see Head Nurse Hopkins and Nurse Toten. Plaintiff told the nurses what happened and they saw that his hip was bruised and swollen. Nurse Hopkins thought it might be fractured so he sent him to the hospital for x-rays due to his hip and facial injuries. (Doc. No. 1 at 8-9).

Officers Kiker and Billpus took him to the hospital in Union County where Plaintiff got x-rays and a CAT scan which were negative for broken bones. (Doc. No. 1 at 9). The doctor said it was just bad bruising and told Plaintiff not to put pressure on the hip, to keep ice packs on his hip and face, and to take ibuprofen for pain.

When Plaintiff returned to Lanesboro C.I., he talked to Dr. Hasenwall who spoke to Mr. Beaver about being moved to another block. Mr. Beaver and Mr. Hartley told Plaintiff he was

3

moving to A-Block and he was escorted back to the unit in a wheelchair.

Pictures were never taken of Plaintiff's injuries even though he requested pictures several times. Plaintiff still has visible bruises from his injuries. (Doc. No. 1 at 11). Plaintiff wrote his statement on September 4, 2015, wrote down inmate witnesses, and asked for statements but "they" never got his statement or made an attempt to do so. (Doc. No. 1 at 10).

Plaintiff seeks declaratory judgment, compensatory damages, punitive damages, jury trial, costs, any other relief the court deems just, proper, and equitable. (Doc. No. 1 at 14).

**II. STANDARD OF REVIEW**

A "court shall dismiss [a prisoner's] case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under

federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Unnamed Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint mentions individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders any allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Plaintiff is granted leave to file an Amended Complaint within 14 days of this Order by

5

properly naming any additional individuals against whom he intends to proceed in the caption in compliance with Rule 10(a).[2] He is cautioned that an Amended Complaint will supersede the original Complaint so it should include all the claims and parties on which he intends to proceed.

**(2)** **Excessive Force**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 1 (1992). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of

---

[2] The Court expresses no opinion about the timeliness, procedural viability, or merit of any such Amended Complaint.

injury." Id. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act ... coupled with a duty to act." Randall v. Prince George's County, 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's County, 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009).

Plaintiff alleges that Snipes punched and kneed his face numerous times, that Heh kicked and punched his face numerous times, and that Pressley choked him and stood by while Snipes kneed him. Hitting, kicking, and choking an inmate can constitute excessive force, especially if the force occurs when an inmate is being restrained. Although Plaintiff admits he was resisting officers to some degree, it is unclear at this juncture whether the force the Defendants used exceeded constitutionally permissible bounds. The allegations are sufficient to proceed against all three of these Defendants on initial review.

Therefore, the excessive force claim shall proceed against Defendants **Snipes, Heh,** and **Pressley**.

 **(3)** **Deliberate Indifference to a Serious Medical Need**

As the Supreme Court has explained, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks

omitted); see Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013) ("the Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," and "forbids the unnecessary and wanton infliction of pain.") (internal quotation marks omitted).

The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008); see Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). However, allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."); see Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976) ("even if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse,

intentional mistreatment, or denial of medical attention.").

Plaintiff appears to allege that Nurse Kapull deprived of adequate medical care after he was kicked, punched, and choked, which left visible injuries. Plaintiff told Kapull he was in pain and that he thought his nose was broken. She looked at his neck and face, acknowledged that he was badly bruised, and did not provide any further care at that time. Plaintiff finally saw different nurses the following day at which point they sent him to the hospital for a possible fracture. Plaintiff has stated a sufficient claim of deliberate indifference due to Kapull's refusal to provide immediate care for Plaintiff's obvious and painful injuries.

Therefore, Plaintiff's claim of deliberate indifference to a serious medical need shall proceed against Defendant **Kapull**.

**(4)** **North Carolina Tort Claims**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

In the instant case, Plaintiff's negligence, assault, and battery claims under North Carolina law involve the same facts as the federal excessive force and deliberate indifference claims that have passed initial review. Therefore, the Court will exercise supplemental jurisdiction over Plaintiff's North Carolina tort claims at this time.

**IV.    CONCLUSION**

For the reasons stated herein, the Court finds that the case should proceed against all four Defendants. Plaintiff may file a superseding Amended Complaint within 14 days of the issuance of this Order, if he wishes.

**IT IS, THEREFORE, ORDERED that:**

1. The Complaint survives initial review under 28 U.S.C. § 1915(e).

2. Plaintiff is granted leave to file an Amended Complaint within 14 days of the date of this Order.

3. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Snipes, Heh, Pressley,** and **Kapull**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: November 28, 2017

Frank D. Whitney
Chief United States District Judge